IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.  Case Number: 3:23-cr-42-MCR
      3:23-cr-43-MCR

WILLIAM MCCONNICO

## ORDER OF RELEASE

The Defendant appeared before this Court for a detention hearing on Tuesday, August 1, 2023 pending a hearing to revoke Defendant's supervised release. The Government moved for detention pursuant to Federal Rule of Criminal Procedure 32.1(a)(6), which incorporates 18 U.S.C. § 3143(a)(1). Section 3143(a)(1) provides that the Defendant shall be detained unless the Court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any person or the community if released under 3142(b) or (c)." Additionally, Rule 32.1(a)(6) makes clear that "the burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the [Defendant]."

After considering the evidence proffered by the Defendant, and the evidence proffered by the Government, as well as the testimonies of United States Probation Office E. Lane and Mrs. McConnico, the Court finds Defendant is subject to supervised release pursuant to a Judgment in a Criminal Case and Defendant has established by clear and convincing evidence that he is not a danger to the community or a risk of flight for the reasons stated on the record, including the following:

This Defendant has been incarcerated the majority of his adult life, spending more than 30 years in prison since approximately the age of 21 for several bank robberies. Although no one was injured during those robberies, in each case, a weapon was shown or brandished, and in one robbery, Defendant shot at a bank teller. While the Defendant's criminal history is certainly a consideration for the Court, that is not why he is before the Court again.

What brings Defendant before the Court is a June 13, 2023, arrest for (1) battery, (2) aggravated assault with a deadly weapon without intent to kill, (3) possession of a weapon by a convicted felon, (4) discharging a firearm in public, and (5) missile into dwelling, vehicle, building or aircraft.  The arrest report indicates that during a domestic dispute between Defendant and his wife, Mrs. McConnico, Defendant grabbed and threw his wife down to the ground and then, subsequently, shot at his wife while she was attempting to leave the residence.  The arrest report was based on statements provided, under oath, by Mrs. McConnico as well as her father, who witnessed the shooting.

Mrs. McConnico testified before this Court that she lied to officers about what really occurred on June 13.  Retreating from her prior statements, Mrs. McConnico contends now that she was the one who pulled the gun on Defendant and in a struggle for the gun, it went off.  Specifically, Mrs. McConnico testified she bought the gun from a friend (the identify of whom she would not disclose) earlier that morning after learning Defendant had cheated on her.  She bought the gun for protection from Defendant and to show him she was serious about being done with him.  When she arrived at her residence later that day, after picking up her grandson, she became enraged when she saw Defendant at her residence.  At that point, she went to see what items he had put in his car, and when she saw some items were hers, she attempted to get them out of the car.  As she did so, Defendant grabbed her and she fell to the ground.  At that point, she walked to a shed located toward the back of the property, and retrieved the gun.  Defendant attempted to get the gun from her and that is when the gun went off.  At that point, frantic, she drove to the Sheriff's Office, flagged down a sheriff's deputy and told him Defendant shot at her.  Also, despite telling officers then that Defendant had thrown her to the ground during the dispute, Mrs. McConnico now says Defendant grabbed her but she hit the ground after tripping over her own feet.  Mrs. McConnico also testified that her father has early onset dementia (although he has not been diagnosed as such) and is blind in one eye.  Mrs. McConnico claims there is no way her father could have seen the shooting from where he was at the time – walking toward the house.

According to USPO Lane, who also testified at the hearing, she met with Mrs. McConnico at the residence while officers were still on the scene.  At that time, Mrs. McConnico's version of events was the same as she had told to the officers.  However, about 4-5 days later, during a second meeting, Mrs. McConnico told Officer Lane a different version – the version she shared with the Court.  Officer Lane advised Mrs. McConnico that she should correct her statements with the Escambia County Sheriff's Office and also that even though she is recanting her statements, USPO will nonetheless need to report the incident to the Court.

Subsequently, on June 29, Mrs. McConnico formally recanted her statements with the Sheriff's Office. Nonetheless, the state charges remain pending and Defendant remains on bond for those charges. A condition of the bond includes a no contact order with Mrs. McConnico.

Needless to say, the Court has concerns about Mrs. McConnico's credibility. Was Mrs. McConnico lying to law enforcement because she was mad at Defendant and wanted to avoid getting in trouble for having brandished the gun or was she telling the truth on June 13? Is Mrs. McConnico lying now to protect Defendant? The Court therefore has no choice but to disregard Mrs. McConnico's statements altogether. Without Mrs. McConnico's statements the evidence at the detention presented was as follows:

(1) According to the police report, Mr. Broughton, Mrs. McConnico's father, told officers Defendant shot at Mrs. McConnico as she was driving away.
(2) There was only one shell casing found at the scene, which is arguably consistent with a struggle for the gun; and is inconsistent with two shots being fired as Mrs. McConnico initially told officers;
(3) Defendant told Ms. Harris, Mrs. McConnico's daughter, who arrived at the scene on June 13, that the gun was in a trash bin. When officers found the gun, it had been disarmed (the magazine had been removed and placed underneath the gun and one live round was near the gun).
(4) Defendant has been employed full-time since he began his supervised release and had, up until the June 13 incident, a stable residence.
(5) If released, Defendant shall reside with Mrs. McConnico's daughter, Ms. Harris.
(6) Defendant can return to his same employment if he is released.
(7) Defendant has not tested positive for drugs, has been compliant with his reporting requirements, and has not had any contact with law enforcement, other than a possible ticket, since being released.

Given the limited evidence currently before the Court regarding the alleged violation, and the evidence presented regarding Defendant's otherwise compliant history while on supervision, the Court finds Defendant has met his burden of establishing he will be neither a risk of non-appearance nor a danger to the community.

Accordingly, IT IS ORDERED Defendant shall be released subject to the existing terms and conditions of his supervised release *and* the additional condition Defendant avoid all contact or communications with Mrs. McConnico.

3:23-cr-42-MCR; 3:23-cr-43-MCR

Entered on August 2, 2023.

*s/ Hope Thai Cannon*
HOPE THAI CANNON
UNITED STATES MAGISTRATE JUDGE

3:23-cr-42-MCR; 3:23-cr-43-MCR